UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.   CASE NO: 2:17-cr-107-FtM-99MRM

OLIVER ROCHER
_____/

**<u>OPINION AND ORDER</u>**[1]

Before the Court is Defendant Oliver Rocher's Motion to Suppress (Doc. 21), the United States of America's response in opposition (Doc. 23), and Rocher's reply (Doc. 26). The undersigned held an evidentiary hearing on Rocher's motion at which Rocher was present and represented by counsel.

Rocher called two witnesses at the hearing – himself and Detective Christopher Tice of the Lee County Sheriff's Office. He also introduced affidavits for search warrants that Detective Tice prepared in unrelated cases. The Government called no witnesses, but it introduced three exhibits: the search warrant for Rocher's hotel room, Detective Tice's affidavit in support of the warrant, and a list of items seized.

At the hearing, the Court held that Rocher had standing to bring the motion to suppress but that he was not entitled to a *Franks* hearing. The Court took under

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

advisement Rocher's challenge to the search warrant's particularity with a written order to follow.  This Opinion and Order is that decision.

## BACKGROUND

This is a drugs and guns case.  It started when a confidential informant ("CI") told Detective Tice that "Lotto," who she later identified as Rocher, was selling heroin.  Neither party disputes that Rocher and Lotto are the same person.  Detective Tice arranged two controlled drug buys between the CI and Rocher.  The first happened on May 11, 2017.[2] The CI called Rocher, and they agreed to meet at a local mall within the hour.  After confirming the CI had no contraband, Detective Tice equipped her with a one-way audio device and gave her prerecorded cash to buy heroin.

About thirty minutes later, another detective drove the CI to the mall and "parked near the front by the food court." (Gov't Ex. 1 at 2).  The detective and the CI went inside, and the CI called Rocher.  At Rocher's direction, the CI left the food court and headed to the mall's back parking lot.  Detective Tice trailed the CI to the lot "to keep a constant visual of [her]." (Gov't Ex. 1 at 2).  The CI entered a Chrysler Sebring with only Rocher inside.  According to Detective Tice, the CI handed Rocher cash and Rocher "handed the CI a bag of suspected heroin." (Gov't Ex. 1 at 2).

The CI returned to the mall where the other detective was waiting.  Detective Tice followed Rocher to a nearby Comfort Inn, where he photographed Rocher walking towards the hotel's side doors.  Detective Tice then met the CI and fellow detective at a set location.  There, the CI's purchased drugs field-tested positive for heroin.  The CI later identified Rocher in a six-person photo line-up as the person who sold her heroin.

---

[2] Unless otherwise specified, all dates in this Opinion and Order occurred in 2017.

Later that same day, Detective Tice returned to the Comfort Inn. Detective Tice passed Rocher in the lobby and watched him drive away. The front desk employee confirmed that Rocher had been at the hotel for several weeks and had rented two rooms.

The second controlled drug buy happened about a week later at the Comfort Inn. To prepare for the buy, Detective Tice searched the CI for unauthorized contraband, equipped her with a one-way audio device, and gave her prerecorded cash. Another detective drove the CI to the hotel. That detective went to the hotel's second floor and watched Rocher meet the CI. Detective Tice was "in the parking lot and kept a constant visual of the CI as the CI walked through the parking lot towards the hotel pool area." (Gov't Ex. 1 at 3). The CI made immediate contact with Rocher. Because Rocher allegedly felt like someone was watching, he brought the CI into a stairwell. Once inside, Rocher handed the CI a newspaper that concealed heroin. A few minutes later, the CI returned to the undercover car. Detective Tice eventually met the CI and other detective at a set location. The drugs the CI purchased again field-tested positive for heroin. The CI also picked Rocher from a photo lineup as the person who sold her drugs the second time.

Fast-forward about three months to August. Detective Tice learned that Rocher left the Comfort Inn and moved to the Budget Inn. On August 1, he saw Rocher walk through the Budget Inn's parking lot and enter Room 115. He watched the room for most of the day. Detective Tice testified that he saw Rocher come in and out of Room 115 about four times that day. He also observed Rocher meet with about six people in fewer than thirty minutes. According to Detective Tice, "[i]t appeared Rocher was conducting

3

quick hand to hand transactions in front of the Hotel room." (Gov't Ex. 1 at 4). Detective Tice also watched Rocher drive a silver Nissan Altima out of the Budget Inn's parking lot.

Detective Tice continued to watch Room 115 the next day. Detective Tice testified that he saw Rocher move in and out of the room about four times. He also observed Rocher meet with people (maybe a dozen or so) at the hotel's door with each interaction lasting under a minute. He also saw Rocher walk toward the Nissan Altima to meet with three women. (Gov't Ex. 1 at 4).

Based on the CI's controlled drug buys and his observations of Rocher at the Budget Inn, Detective Tice applied for a warrant on August 2 to search Room 115. A county court judge signed a search warrant that incorporated Detective Tice's affidavit. (Gov't Ex. 2). When the officers executed the search warrant on August 3 around 7:00 a.m., they found Rocher sleeping in the hotel bed. They arrested Rocher and seized these items: cocaine, heroin, cash, Smith & Wesson firearm, magazine clip, First Alert safe, digital scale, and bottles of caffeine and testosterone. (Gov't Ex. 11).

Based on the foregoing, a federal grand jury indicted Rocher for distributing heroin and cocaine, possessing a firearm and ammunition as a convicted felon, and possessing a firearm to further drug trafficking. (Doc. 1). He now moves to suppress the drugs, firearm, ammunition, and his statements. (Doc. 23).

## DISCUSSION

### A. Standing

At the hearing, the Court first heard the Government's challenge to Rocher's standing to bring the motion to suppress. Standing is a shorthand reference for the threshold determination under the Fourth Amendment of whether Rocher had a

reasonable expectation of privacy in the invaded area – Room 115. *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998).

The Government argued that Rocher lacked standing because he rented the hotel room under an alias only to sell drugs and changed his story about owning the clothes found in the room. The Court was unpersuaded. It found at the hearing that Rocher proved a reasonable expectation of privacy in Room 115. Rocher testified at the hearing that he lived at and slept in Room 115 for the first three days in August. This testimony was consistent with Defective Tice who witnessed Rocher freely access Room 115 on August 1 and 2. According to Detective Tice, Rocher came and went, met people at Room 115's door, and even let individuals inside. When the officers executed the search warrant, Rocher was sleeping in the bed, his driver's license was secured in the safe, and his clothes were in the room. Based on these facts, and for the reasons stated on the record at the hearing, the Court found that Rocher had standing to bring his motion to suppress.

## B. *Franks* hearing

After deciding Rocher had standing, the Court heard argument on Rocher's request for a *Franks* hearing. Under the Fourth Amendment, a search warrant must be supported by a sworn affidavit containing information that "is believed or appropriately accepted by the affiant as true." *Franks v. Delaware*, 438 U.S. 154, 165 (1978). "Affidavits supporting warrants are presumptively valid." *United States v. Lebowitz*, 676 F.3d 1000, 1010 (11th Cir. 2012). "Under *Franks*, a defendant may challenge the veracity of an affidavit in support of a search warrant if he makes a 'substantial preliminary showing' that (1) the affiant deliberately or recklessly included false statements, or failed

5

to include material information, in the affidavit; and (2) the challenged statement or omission was essential to a finding of probable cause." *United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006) (citing *Franks,* 438 U.S. at 155-56)). A defendant who satisfies both prongs is entitled to an evidentiary hearing. *Id.*

Here, Rocher satisfied neither prong. *Id.* at 1294 (noting "the substantiality requirement is not lightly met" for a *Franks* hearing). The Court thus held at the hearing that Rocher was not entitled to a *Franks* hearing. According to Rocher, Detective Tice's "constant visual" statements in his affidavit were false and he omitted the CI's death and criminal history from his affidavit. But this attack was speculative and conclusory. *Id.* ("To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." (internal quotations and citation omitted)). Although Detective Tice could have used tighter language in his affidavit, Rocher offered nothing to show that Detective Tice intentionally lied, recklessly disregarded the truth, or deliberately misled the judge reviewing his affidavit. The same goes for Detective Tice omitting the CI's death and criminal history because that information would not have borne on the judge's probable cause determination. Many confidential informants have substantial criminal histories – otherwise they are simply concerned citizens. Falling short of satisfying both *Franks* prongs, the Court denied Rocher's request for a hearing. *See id.* at 1293 ("Generally, a court's decision about whether to hold an evidentiary hearing lies within that court's sound discretion[.]").

This finding left Rocher's argument that the search warrant violated the Fourth Amendment's particularity requirement, which the Court turns to next.

**C. Particularity**

The Fourth Amendment requires a search warrant to describe with particularity the things to be seized. U.S. Const. amend. IV. "This requirement is aimed at preventing 'general, exploratory rummaging in a person's belongings.'" *United States v. Wuagneux*, 683 F.2d 1343, 1348 (11th Cir. 1982) (citations omitted). The requirement for particularity "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). "The exclusionary rule operates to safeguard Fourth Amendment rights like the particularity requirement for a search warrant." *See United States v. Carson*, 520 F. App'x 874, 888 (11th Cir. 2013); *see also Stanford v. Texas*, 379 U.S. 476, 485-86 (1965).

Under the law in this circuit, "[a] description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *Wuagneux*, 683 F.2d at 1348 (citing *United States v. Cook*, 657 F.2d 730, 733 (5th Cir. 1981)). The Eleventh Circuit has clarified that "[i]t is universally recognized that the particularity requirement must be applied with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit." *Wuagneux*, 683 F.2d at 1349 (citations omitted). "A search warrant must indeed be sufficiently precise as not to permit a general search, but the test is the reasonableness of the description. Elaborate specificity is unnecessary." *United States v. Strauss*, 678 F.2d 886, 892 (11th Cir. 1982) (citations omitted); *see also United States v. Burke*, 784 F.2d 1090, 1092 (11th Cir. 1986) (stating a warrant "need only describe the place to be

searched with sufficient particularity to direct the searcher, to confine his examination to the place described, and to advise those being searched of his authority.").

Rocher argues the search warrant for Room 115 is constitutionally deficient because it does not identify the items to be seized. To follow Rocher's argument, a closer review of the search warrant is needed. The warrant says Detective Tice had probable cause to believe Rocher was violating two Florida laws – possession of heroin and sale of heroin.[3] The next lines read:

> [t]hat the Affiant has probable cause to believe and does believe that *property connected with the above listed crime(s)* is currently being contained, stored, or concealed within the following location:
>
> The Hotel name is the Budget Inn located at 3715 South Cleveland Avenue in Fort Myers 33909, Lee County Florida.

(Gov't Ex. 2 (emphasis added)). Thus, the search warrant describes the place to search, but it does not list the items to be seized. Instead, the phrase "property connected with the above listed crime(s)" is all the warrant specifies for items the officers could seize. Because neither the warrant nor Detective Tice's affidavit identifies the specific items to be seized, Rocher argues the search warrant fails on its face.

The pertinent issue, then, is whether the phrase "property connected with the above listed crime(s)" is sufficiently particular within the allowable margin of flexibility. There is no Eleventh Circuit precedent on point, and the parties assert opposing arguments and rely on competing decisions.

---

[3] The warrant specifically stated, "[t]he laws prohibiting Possession of heroin, controlled by 893.13(6d) of the Florida State Statutes"; and "[t]he laws prohibiting Sale of heroin, controlled by 893.13(1a1) of the Florida State Statutes." (Gov't Ex. 2).

8

In attacking the warrant, Rocher claims "property connected with above listed crime(s)" sweeps too broadly because Detective Tice had information from his investigation to be specific. To him, the affidavit and/or warrant should have listed, at a minimum, heroin, cash, cell phone, and drug paraphernalia. Because none was listed, Rocher argues Detective Tice was not as specific as he could have been. And without a particularized list describing the items to be seized, Rocher maintains the warrant violated his Fourth Amendment rights – plain and simple.

Rocher relies on the Supreme Court's decision in *Groh v. Ramirez*, 540 U.S. 551 (2004) to support his argument. In *Groh*, a federal agent prepared a warrant application to search for weapons, explosives, and records in a Montana ranch. Although the application described the contraband that the agent expected to find, the warrant was less specific. It identified no item the agent intended to seize. That is because the agent mistakably described the ranch rather than the "alleged stockpile of firearms" in the space for naming property to be seized. *Id.* at 554 (footnote omitted). Worsening matters, the warrant did not incorporate by reference the application's itemized list. When the officers found no weapons, the ranch owners sued for constitutional violations, including the warrant's lack of particularity.

The Supreme Court agreed with the ranch owners. It held "[t]he warrant was plainly invalid" because it lacked any description of the type of evidence sought. *Id.* at 557. The agent's affidavit and application did not save the warrant from facial invalidity because the warrant incorporated neither. The Court also rejected the agent's argument that, even if the warrant was invalid, the search was still reasonable because a judge authorized the warrant based on probable cause, the agent orally described to the ranch

owners the items to be seized, and the search did not exceed the limits intended by the judge and agent. The Court stated,

> [t]his warrant did not simply omit a few items from a list of many to be seized, or misdescribe a few of several items. Nor did it make what fairly could be characterized as a mere technical mistake or typographical error. Rather in the space set aside for the description of the items to be seized, the warrant stated that the items consisted of a 'single dwelling residence . . . blue in color. In other words, the warrant did not describe the items to be seized *at all*. In this respect the warrant was so obviously deficient that we must regard the search as "warrantless" within the meaning of our case law.

540 U.S. at 559 (citations omitted and emphasis in original).

Rocher's reliance on *Groh* is misplaced. The *Groh* warrant had nothing and this warrant has something. And that something is the "property connected with the above listed crime(s)" phrase. Although awkwardly worded, the language told officers and Rocher the search was limited to evidence related to possession and sale of heroin. *See United States v. Castro*, -- F.3d -- 2018 WL 746537, at *2 (6th Cir. Feb. 1, 2018) ("A warrant that empowers police to search for something satisfies the particularity requirement if its text constrains the search to evidence of a specific crime" (citing *Andresen v. Maryland*, 427 U.S. 463, 480-81 (1976) (other citations omitted)). As detailed in the search warrant affidavit, detectives had been conducting an ongoing drug-trafficking investigation on Rocher, had a CI buy heroin from him twice, and observed him making what appeared to be additional drug sales at Room 115. This was not a general warrant. And because the warrant provided some description of the items to be seized, *Groh* is distinguishable from this case.

It is also not lost on the Court that a computer-related error likely explains why the "property connected with the above listed crime(s)" is the extent of the warrant's

10

particularity – a point Rocher recognizes. Detective Tice admitted it is his practice to list specific items to be searched for in his affidavits for search warrants. At the hearing, Rocher introduced four affidavits Detective Tice prepared in unrelated cases that verifies the practice. (Def. Ex. 6A-6D). However, the search warrant for Room 115 was different because it lacked any such list. For this case, Detective Tice explained he prepared an electronic affidavit using a new computer program that auto-populated and did not allow him to type the items he intended to seize. Although Detective Tice testified to believing his list of the drug-related items was in the affidavit, he could not explain why it fell off other than the new computer program. Rocher did not challenge Detective Tice's testimony and even conceded that the absence of an itemized list was not likely Detective Tice's fault.

Where Rocher presented a black and white argument on particularity, the Government shows the gray area to the issue. It focuses on the practical margin of flexibility standard that courts use to review warrants. According to the Government, Detective Tice was as specific as he could be, and the phrase "property connected with the above listed crime(s)" reflected all the information he had. The Government maintains Detective Tice had only probable cause to believe Rocher was selling and possessing heroin in Room 115 – he did not know the specific items he would find in the room. To the Government, Detective Tice could only have made an educated guess in describing specific items. The Government does not stop there. It also defends the "property connected with the above listed crime(s)" phrase as sufficiently particular because, in run-of-the-mill drug cases like this, officers know their search is limited to items common in

the drug business like narcotics, money, and firearms. The Government thus argues there was no need for a more particularized description in the warrant.

The Government relies on two circuit cases, both of which are illustrative. The first is *United States v. Raglin*, 663 F. App'x 409 (6th Cir. 2016). In *Raglin*, a detective "inadvertently deleted the 'boilerplate' language that describe[d] the items typically sought during a drug trafficking search" from the proposed search warrant. *Id.* at 411. But the warrant incorporated the detective's affidavit that sought "evidence related to the illegal use/s[ale]/transfer of illegal narcotics." *Id.* Armed with this warrant, police seized cocaine, cash, loaded pistols, and equipment to package drugs in the defendant's home. The defendant moved to suppress the evidence, arguing the warrant failed to describe the evidence sought with particularity. The district court denied the motion, and the defendant appealed.

The Sixth Circuit affirmed the district court. It held "the authorization to look for and seize 'evidence related to the illegal use/s[ale]/transfer of illegal narcotics' satisfie[d] the particularity requirement." *Id.* at 412. In finding the warrant had a sufficient degree of specificity, the court examined (1) what information was reasonably available to the police, (2) the crime involved, and (3) the types of items sought. As to the first factor, the court reasoned the officers only knew the defendant was involved in drug trafficking. Thus, according to the Sixth Circuit, there was not much more the detective could have said other than he was looking for evidence of drug trafficking. The court concluded a speculative or boilerplate list was not needed because it was enough for the warrant to specify the underlying offense. *Id.* at 413. As to the crime involved and types of items sought, the court stated,

> [d]rug trafficking is a crime that often generates the same distinctive evidence from case to case. That's why this police officer and many others have a generic list of items to look for in this kind of investigation. There may be some cases in which, because of certain facts uncovered in the investigation, the police will be seeking unusual or highly specific pieces of evidence in order to tie the defendant to drug trafficking. But in a run-of-the-mill case like [defendant's], where the police have generic, but clear, information about the suspect's trafficking activity, it's difficult to see the difference between a warrant that seeks "evidence related to the illegal use/s[ale]/transfer of illegal narcotics" and a warrant that seeks "evidence of narcotics trafficking, including drugs, cash, weapons, scales, and other drug-trafficking paraphernalia."

*Id.* at 412-13.

The second case on which the Government relies is *United States v. Dickerson*, 166 F.3d 667 (4th Cir. 1999), *rev'd on other ground*, 530 U.S. 428 (2000). In *Dickerson*, the warrant authorized seizure of "evidence of the crime of bank robbery." *Id.* at 673. The Fourth Circuit found the warrant to be sufficiently particularly because bank robbery generates the same "distinctive evidence" every time it is committed. *Id.* at 694. In so finding, the court distinguished between evidence related to general criminal activity and evidence of a particular crime:

> a warrant authorizing a search for evidence relating to a broad criminal statute or general criminal activity such as wire fraud, fraud, conspiracy, or tax evasion, is overbroad because it provides no readily ascertainable guidelines for the executing officers as to what items to seize. . . . In contrast, a warrant authorizing a search for evidence relating to a specific illegal activity, such as narcotics . . . is sufficiently particular.

*Id.* (citing *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992) (internal quotations omitted)). Although the court recognized the warrant to have a broad description, it found the warrant had the requisite degree of specificity.

13

The reasoning in *Raglin* and *Dickerson* sways the Court in the Government's favor. The warrant identified the crimes and corresponding statutes in which Detective Tice had probable cause. Moreover, heroin possession and sale are crimes that generate the same general evidence from case to case. Therefore, specifying the underlying crimes of heroin possession and sale limited the officers' search and no other information was needed to prevent a general search of Rocher's belongings. *See Raglin*, 663 F. App'x at 413 (stating, "specification of the underlying offense is the key limit on the scope of the search, not a speculative or boilerplate list"); *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 456 (S.D.N.Y. May 20, 2013) (rejecting a warrant that was silent on the criminal offenses being investigated and "not direct[ing] searching officer to seize evidence *related to,* or *concerning*, any particular crime or type of crime" (emphasis in original)); *United States v. Dupree*, 781 F. Supp. 2d 115 (E.D.N.Y. 2011) (concluding a warrant to be particular where its attachment stated the "items to be seized are evidence or instrumentalities of violations of 18 U.S.C. §§ 1341, 1343, 1344, and 1349"). And there was no atypical evidence Detective Tice had to tie Rocher to heroin trafficking that should have been in the warrant. The warrant also enabled officers to reasonably ascertain and identify the things they could seize. They did just that by taking items reasonably associated with drug trafficking, such as heroin, cocaine, cash, safe, firearm, ammunition, and a scale. Although the warrant could have been more precise, it still satisfies the particularity the Fourth Amendment demands.

Rocher makes several contrary arguments; all are unconvincing. First, he argues that *Raglin* and *Dickerson* do not apply here because those circuits' tests for particularity are less stringent than the Eleventh Circuit's test. According to Rocher, the Eleventh

14

Circuit requires an officer to provide as much detail as circumstances permit in the affidavit. He says the same is not so in the Fourth and Sixth Circuits. The Court disagrees. The Fourth and Sixth Circuits are consistent with the Eleventh Circuit. *Compare United States v. Sedlak*, 697 F. App'x 667, 668 (11th Cir. 2017) (stating, in deciding the sufficiency of a warrant's description, the court considers whether the description is "as specific as the circumstances and the nature of the activity permit"); *with Raglin*, 663 F. App'x at 412 (stating "the degree of specificity required in a search warrant varies depending on (1) 'what information is reasonably available to the police,' . . . (2) 'the crime involved,' as well as (3) 'the types of items sought[.]"); *Dickerson*, 166 F.3d at 693 ("The test for the necessary particularity of a search warrant is 'a pragmatic one: The degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved.'" (citation omitted)). To the extent the circuits differ, they do not diverge so much as to render *Raglin* and *Dickerson* inapplicable.

Second, Rocher points to *United States v. Buck*, 813 F.2d 588 (2d Cir. 1987) to invalidate the warrant. In *Buck*, the defendant faced a multi-count indictment that stemmed from separate armored car robberies in which several people died. *Id.* at 589. A judge orally issued a search warrant that allowed officers "to seize any papers, things or property of any kind relating to previously described crime" in defendant's apartment. *Id.* at 590. The district court suppressed the evidence seized because the warrant flubbed the particularity requirement. *Id.* The Second Circuit affirmed the suppression. It found the warrant lacked particularity because it described only the crime and used "*all* in general boilerplate terms" without limiting the evidence sought. *Id.* at 591 (emphasis in

15

original). The court also faulted the warrant for "le[aving] it entirely to the discretion of the officials conducting the search to decide what items were to be seized." *Id.* at 592 (internal quotation marks and citation omitted).

*Buck* falls flat because it involved several crimes with dissimilar underlying evidence. That differs greatly from the two run-of-the-mill drug offenses here. The search warrant's reference to possession and sale of heroin limited the officers' discretion in what they could seize. Such a result was not so straightforward in *Buck* given the varying crimes. The Second Circuit's fear that too much was left in the officers' hands does not exist here.

In reaching this result, the Court does not ignore the Supreme Court's warning that "as to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196 (1927). Rather, it is mindful of the Eleventh Circuit's later comment on that principle: "if this statement were construed as a literal command, no search would be possible." *Wuagneux,* 683 F.2d at 1349 n.4 (citation omitted). Under the facts of this case, the Court sees no reason to avoid a commonsense reading of the warrant to favor a hyper-technical one. *See United States v. Ventresca,* 380 U.S. 102, 108 (1965) (stating courts must interpret search warrants "in a commonsense and realistic fashion" and "[a] grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting"); *United States v. Sierra,* 585 F. Supp. 1236, 1242 (D.N.J. 1984) ("While it is true that a warrant must be as particularized as the facts permit, this command must be interpreted in a common sense fashion and cannot be

16

carried to an absurd extreme."). In short, the warrant provided sufficient guidelines to officers to meet the test of particularity.

This circuit's precedent on so-called catchall provisions in search warrants offers additional guidance. See *United States v. Peagler*, 847 F.2d 756 (11th Cir. 1988) and *United States v. Smith*, 918 F.2d 1501 (11th Cir. 1990). In *Peagler*, the police obtained a warrant to search the defendant's home for "documents, records, papers, funds and any other evidence constituting trafficking in narcotics." 847 F.2d at 757. With this warrant, officers seized safety-deposit box keys. Officers got a warrant to search the box, and inside they found marked cash used during a controlled drug buy. The defendant moved to suppress the keys and money, arguing the original warrant was an invalid general search that did not authorize officers to seize the keys. The Eleventh Circuit rejected his argument. Citing to the language "any other evidence constituting trafficking in narcotics," the court found the warrant allowed officers to search for evidence connected to drug trafficking, and drug traffickers often use safety-deposit boxes to conceal money from illegal drug dealings.

A similar result followed in *Smith*. In that case, a search warrant allowed officers to seize "cocaine, documents, letters, photographs, business records, and other evidence relating to narcotics trafficking." 918 F.2d at 1507. Officers seized jewelry valued at over $400,000. The Eleventh Circuit upheld the seizure because, in reasonably reading the warrant's description, it was directed at "materials having a nexus to narcotics trafficking." *Id.* at 1507-08. From there, the court stated, "it is disingenuous to suggest that in these circumstances the jewelry was not evidence of narcotics trafficking." *Id.* at 1508.

17

Although not directly on point, *Peagler* and *Smith* affirm the general principle that courts must use a practical margin of flexibility when deciding particularity challenges. In both cases, the Eleventh Circuit did not suppress evidence that fell under a generic catchall provision after looking at the case on a whole. The Court will do the same here. When read in context, Detective Tice's warrant satisfied the Fourth Amendment and limited the officers to searching Room 115 for evidence of heroin possession and sale. At bottom, the warrant was specific enough to guard against the officers performing an exploratory rummaging of Rocher's belongings. Consequently, for the above reasons, the Court denies Rocher's motion to suppress.

One last point. Even if the Court reached a contrary conclusion about the warrant's particularity, the good-faith exception to the exclusionary rule applies. *See United States v. Leon,* 468 U.S. 897, 920 (1984) (allowing the government to use evidence obtained by law enforcement officers who acted in reasonable reliance on a search warrant issued by a detached, neutral magistrate but ultimately found to be invalid). This is not a case in which a "simple glance" at the warrant would reveal deficiencies glaring enough to make a reasonably well trained officer's reliance on it unreasonable. *Groh,* 540 U.S. at 564; *see also United States v. Martin,* 297 F.3d 1308, 1313 (11th Cir. 2002) (identifying the four limited circumstances in which *Leon*'s good faith exception does not apply). The warrant and affidavit specified the location to be searched and detailed Detective Tice's probable cause for heroin possession and sale. Detective Tice also obtained the warrant in good faith, acted within its scope, and acted in the objectively reasonable belief that his conduct did not violate the Fourth Amendment. Thus, the good faith exception to the exclusionary rule applies.

Accordingly, it is now

**ORDERED:**

Defendant Oliver Rocher's Motion to Suppress (Doc. 21) is **DENIED**.

**DONE AND ORDERED** in Fort Myers, Florida on this 26th day of February 2018.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record